# IN THE OREGON TAX COURT

GRUBB et al

*v.*

## DEPARTMENT OF REVENUE

(TC 2559)

Kevin P. O'Connell, Hanna, Urbigkeit, Jensen, Goyak & O'Connell, Portland, represented plaintiff.

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered December 8, 1987.

**CARL N. BYERS, Judge.**

Plaintiffs appeal from income tax deficiencies assessed for the years 1980 and 1981. Defendant assessed the deficiencies after disallowing certain expenses plaintiffs incurred in maintaining and training a horse named Beauregarde. Defendant determined that plaintiffs' purchase and maintenance of Beauregarde was not "for profit" as required by the Internal Revenue Code, particularly section 183.

The relevant facts are as follows:[1]

---

[1] The court recognizes that many of the recited facts are based upon the taxpayers' self-serving statements. However, in the absence of any reason to question the credibility of the taxpayer or other witnesses testifying in their favor, the court accepts their factual statements as true.

Plaintiffs are both employed, husband as a college professor and marketing consultant and wife as an office manager. Plaintiffs have three children, only one of whom, Elizabeth, was interested in horses. Elizabeth started riding horses just prior to entering high school. After about one year, when it became apparent that her interest and abilities with regard to horses were substantial, plaintiffs purchased a horse known as War Coquette for $2,400 in 1979. At that point, the horse was trained, the rider was untrained. With expert assistance, Elizabeth learned to become an accomplished rider and trainer. Plaintiffs sold War Coquette in July of 1980, for $6,000. Plaintiffs reported the gain on their 1980 income tax return but did not claim any expense in connection with War Coquette.

With War Coquette, Elizabeth had acquired a certain level of skill with regard to riding, training and showing horses and wanted to "move up." Plaintiffs were aware of the profit potential in horses, particularly in the junior rider class. Plaintiffs sold War Coquette in order to purchase the horse Beauregarde. Plaintiffs used the sale proceeds from War Coquette plus personal cash and also borrowed $4,800 from a bank to purchase Beauregarde for $15,000. At the time of purchase, Beauregarde was in poor condition, lacking in muscle tone and training. Elizabeth testified that he would lay his ears back and bite. Although he was approximately the same age as War Coquette, he was not properly trained for junior riders. Elizabeth assumed primary responsibility for training Beauregarde, although she received the assistance of James Cook, a professional horse trainer. Beauregarde was entered in about 12 major shows. Elizabeth rode Beauregarde in the junior rider division shows while a professional rider was used for other divisions. Beauregarde won some recognition in these shows.

In December 1980, plaintiff Edward and others formed a corporation known as Quiet Valley Associates, Inc., to acquire, raise, train and sell horses and to acquire and use equipment and facilities in connection therewith. In September 1981, Edward purchased a 10 percent interest in a horse known as Atomic Light.

The evidence adduced at the trial indicated that the effects of the recession hit the horse industry hard. James

Cook and Edward both testified that Beauregarde would have had a value of between $30,000 and $45,000 in 1981, but the rapid decrease in the market reduced the value such that by August of 1982, Beauregarde was sold for only $15,000. The market did not improve quickly. Plaintiff sold his interest in Atomic Light at a loss in late 1983. Plaintiff sold his interest in Quiet Valley Farms for a gain in December 1983. In the fall of 1983, plaintiff purchased a young horse named Co-ed for $3,500. This horse was traded in December 1986, for a horse named "Claim to Fame" which the parties then valued at $6,000. Claim to Fame was sold in July 1987, for $12,000, but the sale was rescinded when the horse turned up lame upon delivery in California.

■ Although all of the above facts are relevant in determining plaintiffs' motives, only plaintiffs' expenses in connection with the horse Beauregarde are contested. Plaintiffs concede that War Coquette was purchased for personal, non-profit activities and was treated as such by them. They also point out that plaintiffs' activity with regard to Quiet Valley Associates, Inc., and Atomic Light have been recognized by the defendant as being for profit. Thus, the only question in this case is whether plaintiffs' ownership and operation of the horse Beauregarde was "an activity * * * engaged in for profit" within the meaning of IRC § 183(a). Such a determination can be particularly difficult where taxpayers' motives may be mixed, change from day to day, or remain beneath the conscious level. In recognition of this, the statute raises a presumption of "for profit" if the taxpayer realizes a profit in two out of seven years of operation. IRC § 183(d). However, the presumption is not applicable in these circumstances and thus of no assistance to the court.

■ Although all circumstances and factors are to be considered, regulation § 1.183-2(b) sets forth nine factors which should be considered in making such a determination.

*Factor No 1:* The manner in which the taxpayer carries on the activity. In this instance, the taxpayers did not maintain business-like records. Although all expenses for Beauregarde were paid from Edward's consulting business account rather than the taxpayers' personal checking account, the auditor was unable to find any records which would enable

the taxpayers to keep track of their profits and losses. However, the auditor, who personally had 20 years experience in breeding and showing horses, acknowledged that there is no standard or typical record-keeping system used by small operators. The auditor did not examine Edward's records for his profitable consulting business. Edward testified that he maintained the same kind of records for that business as he did for Beauregarde.

*Factor No. 2:* Expertise of the taxpayer or his advisers. It appears that Edward acquired his interest in the economics of the "horse industry" as a result of interest in his daughter's sport. He subsequently subscribed to magazines and involved himself in the industry in order to become familiar with its economic aspects. He talked to and relied upon the advice of experts such as James Cook. Edward's activities in connection with Quiet Valley Associates, Inc., and Atomic Light indicate that he applied his professional training to acquire knowledge of the economics of the industry.

*Factor No. 3:* Time and effort expended by the taxpayers in carrying on the activity. Edward and his wife did not spend much time in connection with Beauregarde's care, training and other activities. Edward's full-time employment as a professor and his consulting business took most of his time. Training and care of the horse was done primarily by Elizabeth, Mr. Cook and others.

*Factor No. 4:* Expectation that assets used in activity may appreciate in value. Based upon the description of Beauregarde, it appears that plaintiffs had reasonable expectation of profit if Beauregarde could be trained to be an acceptable junior rider horse. Edward testified that appreciation was the primary source of gain to be realized.

*Factor No. 5:* The success of taxpayer in carrying on other similar or dissimilar activities. Plaintiffs had no other similar activities except their ownership of War Coquette. The profit realized upon the sale of War Coquette may have induced plaintiffs to believe that there were profits to be realized from the appreciation in value of horses.

*Factor No. 6:* The taxpayers' history of income or losses with respect to the activity. If all of plaintiffs' expenses and income with regard to horses are considered, including

War Coquette, Atomic Light, and Quiet Valley Associates, Inc., this factor would indicate that plaintiffs overall lost money. It is significant however that plaintiffs realized a gain on the sale of War Coquette before the industry was affected by the recession.

*Factor No. 7:* Amount of occasional profits, if any, which are earned. This factor looks to the relationship between the size of the investment and the profits realized therefrom, which may be indicative of a taxpayer's intent or lack of intent to make a profit. Plaintiffs' gain on the sale of War Coquette may be some indication of intent to make a profit when plaintiffs decided to invest in a substantially more expensive horse.

*Factor No. 8:* Financial status of the taxpayers. While plaintiffs have a substantial combined income, they are not "wealthy." As plaintiff points out, it is unlikely that they would borrow $4,800 to purchase an expensive horse used by only one of their three children unless they had hopes of making a profit.

*Factor No. 9:* Elements of personal pleasure or recreation. This is perhaps the strongest and heaviest factor which would indicate that plaintiffs did not engage in the activity for profit. Although neither of the taxpayers rode Beauregarde, their daughter's happiness may be assumed to be equally as important as their own. It is clear that Elizabeth needed a new horse to progress in her abilities as a rider and trainer.

After considering the above factors, the court finds that plaintiffs had the requisite profit motive in purchasing and owning Beauregarde. Although plaintiffs' records are lacking and the element of personal pleasure for a family member strong, on the whole, most of the factors tend towards a profit motive. In addition to the above factors, the court has considered the effects of the recession. The Court is persuaded that except for the recession, plaintiffs could have realized a profit by selling Beauregarde. Because of the recession, which cooled the horse market substantially, plaintiffs held Beauregarde longer than anticipated. This resulted in increasing their expenses and selling at a depressed price. James Cook testified that the recession put him out of the horse business entirely.

Based on all of the evidence adduced by the parties, the court finds that plaintiffs had the requisite primary profit motive. Defendant's Opinion and Order is set aside and held for naught. Judgment will be entered consistent with this opinion. Costs to plaintiff.